UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ANGEL CRUZ,

Petitioner,

v.

ROBERT ERCOLE, Superintendent,

Respondent.

9:07-CV-0559 (DNH)

APPEARANCES:

FOR THE PETITIONER:

ANGEL CRUZ
Petitioner, *pro se*
02-B-2317
Upstate Correctional Facility
PO Box 2001
Malone, NY 12953

FOR THE RESPONDENT:

HON. ANDREW M. CUOMO
Office of the Attorney General
State of New York
120 Broadway
New York, NY 10271

LISA FLEISCHMANN, Esq.
Assistant Attorney General

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION AND ORDER

## I. Background[1]

### A. State Court Proceedings

According to the testimony adduced at trial, in early April, 2002, petitioner, *pro se*

[1] The background information contained in this Memorandum-Decision and Order is derived from the state court records supplied to this Court.

Angel Cruz, his fiancee, Edna Bermudez, and Bermudez's friend, Annie Rannazzo, all traveled from Brooklyn to stay at the house of a friend on Mason Street in Utica, New York. *See* Transcript of Trial of Angel Cruz (9/9/02) ("Trial Tr.") at 448-50, 473-75. Sometime during the evening of April 4, 2002, Cruz, who was also known as "Felix," *id.* at 350, went to a nearby residence on Bleecker Street where an acquaintance, Tamaica Watkins, lived with her two children and her brother, Daniel Watkins. *Id.* at 326-27, 408, 411. Several other people were at the Bleecker Street home at that time, including Victor Arimont, Marilyn Colon, Omar Harvey and Juan Delacruz, who was also known as "Kane." *Id.* at 329, 369-70, 408, 424-25 and 503-04.

Sometime after Cruz arrived at that residence, he was heard arguing in the kitchen with Delacruz. *Id.* at 342-43, 352. According to Watkins, Cruz and Delacruz were arguing because Cruz had asked Watkins' brother to purchase drugs from Cruz but he declined, and Cruz had also asked Delacruz to buy drugs, but he, too, refused. *Id.* at 354-57. When Cruz thereafter observed someone giving money to Delacruz, Cruz became angry and then informed Delacruz that he was "really going to buy it." *Id.* at 362-63. Around that time, Cruz motioned toward Delacruz with a knife, prompting him to remark "that was pretty close." *Id.* at 360-61. When Cruz jabbed at Delacruz again, Watkins saw Cruz's fist hit Delacruz's chest, after which she saw the knife being pulled from Delacruz's torso. *Id.* at 364-65. Cruz motioned toward Delacruz a third time with the knife, however he jumped back and hit a wall, damaging it, and began walking towards Watkins' bedroom. *Id.* at 365-67. Around that same time, Watkins heard Cruz boast: "[t]hat's what you get for fucking with my hustle. Now look at you." *Id.* at 369.

Harvey then saw Cruz pacing in the kitchen, holding a cigarette and a long butcher knife. *Id.* at 414-15. Delacruz then emerged from Watkins' bedroom and said to Cruz: "[y]ou fucking stabbed me," after which he turned to Arimont and stated: "Victor, he fucking stabbed me." *Id.* at 369-70. When Watkins told Cruz to leave the apartment, he dropped the knife into the sink, ran some water and left the building. *Id.* at 371-72.[2]

Sergeant Wayne Manolescu and Officer Jack Sitts of the Utica police department were the first officers to arrive at the Bleecker Street apartment. *Id.* at 207-08. Upon arriving at the scene, they observed a man lying on the floor. *Id.* at 208-09. When they asked the occupants of the apartment what had transpired, the officers were initially told that the victim had left the apartment and returned a short time later after having been stabbed. *Id.* at 211-12. Based upon that misinformation, the officers canvassed the area around the residence and questioned people on the street about the stabbing, however the officers obtained no information about an assault and could not locate any blood trails outside the residence or any other evidence suggestive of criminal activity. *Id.* at 212-13. The Bleecker Street apartment was then searched, which revealed the presence of "push-in" damage to an interior wall and a black-handled steak knife lying in water in the kitchen sink. *Id.* at 275-80. There was no blood on the knife or in the sink, however, and a fingerprint found on the knife blade contained insufficient detail to

[2] Although Watkins had identified Cruz as Delacruz's assailant in pretrial proceedings, *see*, *e.g.*, Appellant's Appendix on Appeal at A19, she initially claimed that she did not see Cruz in the courtroom at his trial. Trial Tr. at 339. At the prosecutor's request, a recess was granted, after which Watkins identified Cruz in the courtroom as the individual who stabbed Delacruz. Trial Tr. at 350, 364-65.

provide evidence of the individual's identity. *Id.* at 285-92.[3]

The records also reflect that Margaret Tropea and her boyfriend, John Miranda, were at their home in Utica when Arimont called Miranda and told him that Delacruz was in the hospital. *Id.* at 520-21. Tropea and Miranda went to the hospital but soon left that institution when the hospital would not release information regarding Delacruz's condition to them. *Id.* at 521-22. They then drove to the Mason Street apartment and, while the two were in that residence, Tropea heard Cruz admit to another individual that Cruz had stabbed Delacruz in the chest. *Id.* at 525-26. Soon thereafter, Tropea and Miranda decided to leave the apartment. *Id.* at 527-28. As they were walking down the staircase, they were stopped by the police, who asked them if Felix was in the apartment. *Id.* at 545-46. Miranda volunteered that he was upstairs. *Id.* at 546. A detective then knocked on the door of the Mason Street apartment and asked for Felix. *Id.* at 546-47. Bermudez answered the door, informed the officers that no one by that name was there, and invited the police to enter the apartment to look for him. *Id.* at 547. During that search, a detective noticed that a door in the kitchen led to a set of stairs leading to an attic. *Id.* at 547-48. Aided by his flashlight, the detective entered the attic, where he observed Cruz lying on the floor, face down, behind a couch. *Id.* at 549. Cruz was then handcuffed and brought downstairs. *Id.* at 549-50.

At trial Stephen Buda, a paramedic with a local ambulance service, testified that he was dispatched to the Bleecker Street apartment and, when he arrived at that

---

[3] At trial, Dr. Michael Sikirica, a forensic pathologist, testified that, to a reasonable degree medical certainty, the knife recovered in the sink of the Bleecker Street residence was consistent with the instrument that had caused the fatal wounds to Delacruz. Trial Tr. at 318-322.

residence, he began treating Delacruz, who had been stabbed and was experiencing difficulty breathing. *Id.* at 228-32. Delacruz was soon thereafter transported to a hospital, where he subsequently died of his stab wounds. *Id.* at 249.

As a result of the foregoing, on April 9, 2002, an Oneida County Grand Jury returned a two count indictment against Cruz in which he was charged with the intentional and depraved indifference murder of Delacruz. *See* Indictment No. 202-105. In September, 2002, Cruz's jury trial on the foregoing charges commenced, with Oneida County Court Judge Barry M. Donalty presiding. At the conclusion of that trial, the jury found Cruz guilty of the intentional murder of Delacruz. *Id.* at 659. On October 24, 2002, Judge Donalty sentenced him to an indeterminate term of twenty-five years to life imprisonment on the murder conviction. *See* Transcript of Sentencing of Angel Cruz (10/24/02) ("Sentencing Tr.") at 7.

On or about April 25, 2005, petitioner filed, through counsel, a brief in support of Cruz's appeal with the New York State Supreme Court, Appellate Division, Fourth Department. In that appeal, Cruz argued that: i) the prosecutor was wrongfully permitted to use Watkins' supporting deposition and grand jury testimony to impeach her credibility during the direct examination of that witness at Cruz's trial; ii) the trial court abused its discretion in permitting the prosecutor to have a twenty minute recess during Watkins' testimony to "coach" her so that her trial testimony conformed to her prior statements; iii) Watkins' testimony was replete with contradictions and was so inconsistent that the jury's verdict should have been set aside as being against the weight of the evidence; and iv) Cruz's sentence is harsh and excessive. *See* Appellate Brief on Appeal (4/25/05) ("App.

Br."). That appeal was opposed by the Oneida County District Attorney, and on November 10, 2005, the Appellate Division unanimously affirmed Cruz's conviction. *People v. Cruz*, 23 A.D.3d 1109 (4th Dept. 2005). On February 24, 2006, the New York Court of Appeals denied Cruz's application for leave to appeal. *People v. Cruz*, 6 N.Y.3d 811 (2006).

**B. <u>This Action</u>**

Cruz commenced the present action by filing, *pro se*, an application seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on May 24, 2007. *See* Dkt. No. 1 ("Petition"). In his petition, Cruz raises three grounds in support of his request for federal habeas intervention: i) the prosecutor improperly used Watkins' grand jury testimony and supporting deposition to impeach that witness after the District Attorney found Watkins' trial testimony to be unsatisfactory; ii) the trial court abused its discretion in affording the prosecutor a twenty minute recess during the direct examination of Watkins so that the prosecutor could coach that witness; and iii) Watkins' testimony "consisted of so many hopeless contradictions and the various versions of her testimony were so irreconcilable that her testimony must be deemed to be incredible as a matter of law," and the verdict set aside as being against the weight of the evidence. *See* Petition, Grounds One through Three.

On October 24, 2007, the Attorney General for the State of New York, acting on respondent's behalf, filed a response in opposition to Cruz's application. Dkt. No. 6. Respondent also filed a memorandum of law in opposition to the petition in which he argues that Cruz is procedurally barred from obtaining the relief he seeks as to some of

his claims, and that all of his claims are without merit. *See* Dkt. No. 7 ("Resp. Mem.").

This matter is now before this Court for disposition.[4]

## II. Discussion

### A. Procedurally Barred Claims

As noted above, respondent argues that petitioner is procedurally barred from pursuing some of the grounds he has asserted herein. *See* Resp. Mem. Specifically, he contends that Cruz has not exhausted the claim he has raised in his first ground for federal habeas relief, *see* Resp. Mem. at 11-13, and that Cruz is precluded from obtaining the relief he seeks in his second ground under the "independent and adequate state ground" doctrine of procedural default. *Id.* at 22-25.

#### i. Unexhausted Claim

It is well-settled that a federal district court " 'may not grant the habeas petition of a state prisoner unless it appears that the applicant has exhausted the remedies available in the courts of the State ....' " *Shabazz v. Artuz*, 336 F.3d 154, 160 (2d Cir. 2003) (quoting *Aparicio v. Artuz*, 269 F.3d 78, 89 (2d Cir. 2001)); *see also Ellman v. Davis*, 42 F.3d 144, 147 (2d Cir. 1994). This is because "[s]tate courts, like federal courts, are obliged to enforce federal law." *Galdamez v. Keane*, 394 F.3d 68, 72 (2d Cir. 2005) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999)) (other citations omitted). As the Supreme Court noted in *O'Sullivan*, "[c]omity ... dictates that when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and

---

[4] Pursuant to General Order No. 32 of the Northern District of New York, the prior reference of this matter to Magistrate Judge David R. Homer is hereby rescinded.

provide any necessary relief." *Id.*, at 844 (citations omitted); *see also Galdamez*, 394 F.3d at 72 (citation omitted).[5]

A petitioner exhausts available state remedies in the federal habeas context by: "(i) present[ing] the federal constitutional claim asserted in the petition to the highest state court (after preserving it as required by state law in lower courts); and (ii) inform[ing] that court (and lower courts) about both the factual and legal bases for the federal claim." *Ramirez v. Attorney Gen.,* 280 F.3d 87, 94 (2d Cir. 2001) (quoting *Picard v. Connor*, 404 U.S. 270, 276-77 (1971)).[6] A "basic requirement" of this exhaustion doctrine is that "the nature or presentation of the claim must have been likely to alert the court to the claim's federal nature." *Jones v. Vacco*, 126 F.3d 408, 413 (2d Cir. 1997) (citation omitted); *see also Berry v. Hulihan,* No. 08 Civ. 6557, 2009 WL 233981, at *2 (S.D.N.Y. Jan. 28, 2009) (citations omitted); *Jackson v. Senkowski*, No. 03 CV 1965, 2007 WL 2275848, at *5 (E.D.N.Y. Aug. 7, 2007). A "state prisoner does not 'fairly present' a claim to a state court" where the appellate brief "does not alert [the court] to the presence of a federal claim ...." *Baldwin v. Reese*, 541 U.S. 27, 32 (2004); *see also Williams v. Breslin*, No. 06-CV-2479, 2008 WL 4179475, at *3 (E.D.N.Y. Sept. 9, 2008) (citing *Baldwin*), 541 U.S.

---

[5] This exhaustion requirement "reduces friction between the state and federal court systems by avoiding the unseemliness of a federal district court's overturning a state court conviction without the state courts having had an opportunity to correct the constitutional violation in the first instance." *O'Sullivan* 526 U.S. at 845 (quotation and citations omitted); *see also Galdamez*, 394 F.3d at 72 (citation omitted).

[6] It is clear that habeas corpus petitioners bear the burden of demonstrating that they have fully exhausted available state remedies. *See Brown v.* No. 04-CV-1087, 2006 WL 3085704, at *5 (E.D.N.Y. Oct. 30, 2006); *Cruz v. Artuz*, 97-CV-2508, 2002 WL 1359386, at *8 (E.D.N.Y. June 24, 2002) (citing *Colon v. Johnson*, 19 F. Supp. 2d 112, 119-20 (S.D.N.Y. 1998)) (other citation omitted); *Ruine v. Walsh*, No. 00 CIV. 3798, 2002 WL 1349713, at *2 (S.D.N.Y. June 19, 2002) (citing *Colon, 19 F. Supp. 2d at 119-20*).

at 29.

Cruz's appellate counsel only cited cases decided by New York State courts, and portions of New York's Criminal Procedure Law ("CPL"), in support of counsel's claims that the District Attorney improperly used the grand jury testimony of Watkins and her supporting deposition to impeach that witness's credibility during the course of Watkins' direct testimony. *See* App. Br. at 23-33. Nowhere in that portion of Cruz's appellate brief did counsel cite, or refer in any way to, any federal case, statute or provision of the United States Constitution. *See id.* Petitioner has therefore plainly failed to fairly present to the state courts the claim he now asserts in his first ground for relief. *E.g. Baldwin*, 541 U.S. at 32.

**ii. Unpreserved Claim**

Cruz's second ground for relief alleges that the trial court erred in allowing the District Attorney to confer with and/or "coach" Watkins during a twenty minute recess that was taken while that witness was testifying on behalf of the prosecution. *See* Petition, Ground Two. In denying this claim in the context of Cruz's direct appeal, the Fourth Department found that Cruz had "failed to preserve for our review his contention that the court erred in granting the prosecutor a brief recess in order to confer with" such witness. *Cruz*, 23 A.D.3d at 1110.[7]

Where the Appellate Division finds that a party has failed to preserve an issue for appellate review, such a determination “constitutes an independent and adequate state

---

[7] Unlike the claim asserted in Cruz's initial ground, counsel did invoke Supreme Court authority in support of the appellate claim that the County Court wrongfully afforded the prosecutor a recess during the direct examination of Watkins. *E.g.* App. Br. at 34 (citing *Perry v. Leeke*, 488 U.S. 272 (1989)).

law ground" precluding review of such a claim when later raised in a federal habeas corpus petition. *See Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999); *Roberts v. Superintendent of the Attica Correctional Facility*, No. 07-CV-285, 2008 WL 3833554, at *9 (W.D.N.Y. Aug. 15, 2008); *Jackson v. Senkowski*, No. 03CV1965, 2007 WL 2275848, at *7 (E.D.N.Y. Aug. 7, 2007). Thus, as with the claim asserted by Cruz in his initial ground for relief, his second habeas claim is procedurally defaulted. *See Parker v. Phillips*, No. 05-CV-1323, 2008 WL 4415255, at *2 (E.D.N.Y. Sept. 24, 2008).[8]

**iii. Consequences of Procedural Default**

Federal courts may only consider the merits of procedurally defaulted claims where the petitioner can establish both cause for the procedural default and resulting prejudice, or alternatively, that a fundamental miscarriage of justice would occur absent federal court review.[9] *See Dixon*, 293 F.3d at 80-81 (citing *Coleman v. Thompson*, 501 U.S. 722 (1991)); *St. Helen v. Senkowski*, 374 F.3d 181, 184 (2d Cir. 2004) ("[i]n the case of procedural default (including where an unexhausted claim no longer can proceed

---

[8] The fact that the Fourth Department alternatively addressed the merits of Cruz's claim regarding the recess that the County Court afforded the prosecutor regarding Watkins (*see Cruz*, 23 A.D.3d at 1110) is of no moment. As United States District Judge Gary L. Sharpe has sagely observed:

> federal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim.

*Wilson v. Superintendent, Attica Corr. Facility*, No. 00-CV-0767, 2003 WL 22765351, at *4 n.7 (N.D.N.Y. Nov. 24, 2003) (Sharpe, J.) (citations omitted), *appeal dismissed sub nom.*, *Wilson v. People of the State of New York*, No. 04-4339pr, slip op. at 1 (2d Cir. Sept. 13, 2004) (No. 00-CV-0767, Dkt. No. 37).

[9] A fundamental miscarriage of justice exists "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Dixon v. Miller*, 293 F.3d 74, 81 (2d Cir. 2002).

in state court), [federal courts] may reach the merits of the claim 'only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent' ") (quoting *Bousley v. United States*, 523 U.S. 614, 622 (1998)) (other citations omitted); *Parker*, 2008 WL 4415255, at *3 (federal courts may only consider habeas claims barred by the independent and adequate state ground doctrine where the petitioner establishes cause for his default and prejudice therefrom, or that he is actually innocent of the crime of which he was convicted).

To establish legal "cause" which would enable this Court to consider these procedurally forfeited claims, Cruz must show that some objective, external factor impeded his ability to: (a) fully exhaust his first ground for relief, and/or (b) preserve for appellate review the claim raised in his second ground. *See Coleman*, 501 U.S. at 753; *Restrepo v. Kelly*, 178 F.3d 634, 638 (2d Cir. 1999); *Pinero v. Greiner*, 519 F. Supp. 2d 360,383, (S.D.N.Y. 2007) (citing *Restrepo, 178 F3d at 638-39*). Examples of external factors include "interference by officials," ineffective assistance of counsel, or proof that "the factual or legal basis for a claim was not reasonably available" at the time of petitioner's default. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Ikker v. Taylor*, No. 08 CV 3301, 2008 WL 5110866, at *4 (E.D.N.Y. Dec. 3, 2008).

Nowhere in this action does Cruz attempt to establish legal cause for his procedural default.[10] Significantly, he has never alleged, either in the state courts or the present action, that his appellate counsel rendered ineffective assistance in failing to

[10] The petitioner bears the burden of demonstrating cause for the procedural default and resulting prejudice. *See Simpson v. Portuondo*, No. 01CIV.8744, 2002 WL 31045862, at *5 (S.D.N.Y. June 4, 2002).

alert the Appellate Division of any federal challenge relating to the claim Cruz now raises in his first ground for relief. Nor has Cruz ever claimed in the state courts that his trial counsel rendered ineffective assistance by failing to object to the recess which the County Court afforded the prosecutor during the course of her direct examination of Watkins, which objection would have preserved that issue for appellate review. *See* Petition at ¶ 10 (petitioner noting that his only challenge to the conviction is the direct appeal counsel filed with the Appellate Division). This Court therefore need not decide whether Cruz has suffered the requisite prejudice, because federal habeas relief is unavailable under this limited exception permitting review of procedurally forfeited claims unless ***both*** cause and prejudice is demonstrated. *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985); *Long v. Lord*, No. 03-CV-0461, 2006 WL 1977435, at *6 (N.D.N.Y. Mar. 21, 2006) (McCurn, S.J.); *D'Alessandro v. Fischer*, No. 01 CIV. 2551, 2005 WL 3159674, at *9 n.10 (S.D.N.Y. Nov. 28, 2005) ("[a]s Petitioner has not shown cause for his default, this Court need not even reach the question of whether Petitioner can show prejudice") (citing *Stepney*, 760 F.2d at 45); *see also Moore v. Greiner*, No. 02 CIV.6122, 2005 WL 2665667, at *12 (S.D.N.Y. Oct. 19, 2005) (citing *Stepney, 760 F.3d at 45*).

The finding that Cruz has failed to establish cause for his default does not necessarily preclude this Court from considering his procedurally forfeited claims, however, because, as noted above, a federal court may nonetheless properly review such claims if the court is convinced that the failure to consider the defaulted claims would amount to a fundamental miscarriage of justice. On this question, however, the Second Circuit has noted that:

> [T]he fundamental miscarriage of justice exception is "extremely rare" and should be applied only in "the extraordinary cases." *Schlup v. Delo*, 513 U.S. 298, 321-22 (1995)..... "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley*[], 523 U.S. [at] 623 .... "To establish actual innocence, [a] petitioner must demonstrate that, 'in light of all the evidence,' 'it is more likely than not that no reasonable juror would have convicted him.'" *Id.* (citing *Schlup*, 513 U.S. [at] 327-28) ... (some internal citations and quotation marks omitted).

*Sweet v. Bennett*, 353 F.3d 135, 142 (2d Cir. 2003); *see also D'Alessandro*, 2005 WL 3159674, at *8; *Marengo v. Conway*, 342 F. Supp. 2d 222, 228 (S.D.N.Y. 2004).

For reasons discussed more fully below in conjunction with petitioner's third ground for relief, this Court finds that he has not demonstrated that he is actually innocent of the murder charge. Since Cruz cannot seek safe harbor from the dismissal of these claims under this final exception permitting habeas review of procedurally defaulted claims, the Court denies, as procedurally forfeited, the claims he has raised in his first and second grounds for relief.

**B. <u>Remaining Claim</u>**

In his third and final ground, petitioner argues that:

> The chief-prosecution witness' testimony consisted of so many hopeless contradictions and the various versions of her testimony were so irreconcilable that her testimony must be deemed to be incredible as a matter of law, and the jury's verdict of guilty on the basis of her testimony should be set aside as being against the weight of the evidence.

Petition, Ground Three.

Unfortunately for Cruz, weight of the evidence review is a product of New York state statute and therefore merely a state law issue. *See* CPL § 470.15; *Graham v.*

*Ricks*, No. 9:02-CV-0303, 2004 WL 768579, at *14 (N.D.N.Y. Apr. 7, 2004) (McCurn, S.J.) (citations omitted); *Cardena v. Giambruno*, No. 03CIV 3313, 2004 WL 239722, at *4 (S.D.N.Y. Feb. 10, 2004) (citations omitted). As such, no cognizable federal issue is presented by a habeas claim challenging the weight of the evidence adduced at trial. *Graham*, 2004 WL 768579, at *14; *Cardena*, 2004 WL 239722, at *4; *Glisson v. Mantello*, 287 F. Supp. 2d 414, 441 (S.D.N.Y. 2003) (citing *Givens v. Burge*, No. 02 Civ. 0842, 2003 WL 1563775, at *10 (S.D.N.Y. Mar. 4, 2003)) (collecting cases); *McBride v. Senkowski*, No. 98 CIV. 8663, 2002 WL 523275, at *4 n.2 (S.D.N.Y. Apr. 8, 2002) (citing *Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996)).

The Court next declines Cruz's invitation to find Watkins' testimony to be incredible as a matter of law. *See* Petition, Ground Three. As the court noted in *Simpson*, trial testimony may properly be considered incredible as a matter of law: "[o]nly where the witness testifies as to facts that [he or she] could not have possibly observed or events that could not have occurred under the laws of nature." 2002 WL 31045862, at *9 (denying habeas petition claiming, *inter alia*, that prosecution witness's testimony was incredible as a matter of law) (citations omitted). As is discussed more fully above, the state court records establish that Watkins was present at the Bleecker Street residence when Cruz was alleged to have stabbed Delacruz. Therefore, she was properly permitted to testify about what transpired between those men at that time. Although defense counsel brought out inconsistencies in that witness's testimony during counsel's thorough cross-examination of Watkins, *see* Trial Tr. at 375-98, nothing suggests that her testimony was incredible as a matter of law. This Court must therefore defer to the

jury's credibility findings concerning the testimony of Watkins, as well as the testimony of the other witnesses who testified at Cruz's trial.  *See Daily v. New York*, 388 F. Supp. 2d 238, 248 (S.D.N.Y. 2005) (where "there is evidence from which the jury could have drawn an inference favorable to the accused but chose not to, the court must 'defer to ... the jury's choice of the competing inferences' ") (quoting *United States v. Kinney*, 211 F.3d 13, 18 (2d Cir. 2000)) (other citation omitted); *see also Keller v. Bennett*, No. 98CV1437, 2002 WL 975306, at *4 (N.D.N.Y. Mar. 21, 2002) (Sharpe, M.J.) ("a habeas court, viewing a cold record, may not properly reassess the jury's finding of credibility concerning the testimony of witnesses offered at trial") (citations omitted), *adopted*, *Keller v. Bennett*, No. 98CV1437 (Dkt. No. 18) (N.D.N.Y. Apr. 15, 2002) (Kahn, J.), *appeal dismissed*, *Keller v. Bennett*, No. 02-2328 (2d Cir. Dec. 12, 2003); *see also Bellezza v. Fischer*, 01CV1445, 2003 WL 21854749, at *15 (E.D.N.Y. Aug. 6, 2003) (on collateral review, a federal habeas court "must presume that the jury resolved any questions of credibility in favor of the prosecution") (citing *Vera v. Hanslmaier*, 928 F. Supp. 278, 284 (S.D.N.Y. 1996)) (other citations and internal quotation omitted).

     Viewing this ground liberally as one alleging that there was insufficient evidence adduced at trial to establish Cruz's guilt, the Court notes that the Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.  *See Fiore v. White*, 531 U.S. 225, 228-29 (2001); *Jackson v. Virginia*, 443 U.S. 307, 315 (1979); *In re Winship*, 397 U.S. 358, 364 (1970). An inquiry into whether there was sufficient evidence adduced at trial to support a

conviction "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993). A habeas petitioner claiming that there was insufficient evidence supporting the conviction is entitled to relief under 28 U.S.C. § 2254 only if it is found "that upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson*, 443 U.S. at 324; *see also Schlup*, 513 U.S. at 323 n.38; *United States v. Powell*, 469 U.S. 57, 67 (1984).

The evidence at trial demonstrated that Cruz was in the kitchen with Delacruz at the Bleecker Street residence around the time he was stabbed. Trial Tr. at 411-13. Cruz became angry at the victim, *id.* at 362-63, and was observed stabbing Delacruz. *Id.* at 360-67. Soon after the stabbing, Harvey saw Cruz holding a butcher knife, *id.* at 414-15, and the victim himself said to Cruz "[y]ou fucking stabbed me." *Id.* at 370. The transcript also reflects that after Cruz left the apartment, he was overheard by Tropea admitting to another individual that he had stabbed Delacruz in the chest. *Id*. at 524-26. Delacruz subsequently died of those stab wounds. *Id.* at 249. The foregoing evidence of Cruz's guilt was plainly sufficient to surpass the relatively modest hurdle posed by *Jackson*. Indeed, after having reviewed the state court record below in conjunction with the present petition, this Court adopts the observation of Judge Donalty that the proof of petitioner's guilt of the murder charge was "overwhelming." *See* Sentencing Tr. at p. 6.

The foregoing establishes that the Appellate Division’s decision denying this aspect of petitioner’s appeal, *see Cruz*, 23 A.D.3d at 1110, is neither contrary to, nor

represents an unreasonable application of, the above-cited Supreme Court precedent.[11] Therefore, Cruz's third and final ground for relief is denied.

## III. Certificate of Appealability

Finally, the Court notes that 28 U.S.C. § 2253(c) provides in relevant part that:

> (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from –
>
> > (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court ....

28 U.S.C. § 2253(c)(1)(A).[12] A Certificate of Appealability may only be issued "if the applicant has made a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). Since petitioner has failed to make such a showing herein, the Court declines to issue any Certificate of Appealability in this matter.

THEREFORE, it is

ORDERED, that

1. Petitioner's habeas petition (Dkt. No. 1) is **DENIED** and **DISMISSED**;

2. This Court shall not issue a Certificate of Appealability in this matter; and

---

[11] Under the Antiterrorism and Effective Death Penalty Act, a federal court may award habeas corpus relief with respect to a claim adjudicated on the merits in state court only if the court determines that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established" Supreme Court precedent, or where the state court ruling was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See Rodriguez v. Miller*, 439 F.3d 68, 73 (2d Cir. 2006) (quoting 28 U.S.C. § 2254(d)).

[12] Rule 22 of the Federal Rules of Appellate Procedure also provides that an appeal may not proceed "unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." *See* Fed. R. App. P. 22(b).

3. The Clerk shall serve a copy of this Order on the parties by regular or electronic mail.

IT IS SO ORDERED.

United States District Judge

Dated: April 3, 2009
Utica, New York